

FILED & ENTERED

JUL 18 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Roni Yani, Debtor | Case No.:   2:10-bk-57294-ER <br> Adv. No.:   2:14-ap-01185-ER |
| **Complaint:** <br> Sarkis Aylozyan, <br> Plaintiff <br> v. <br> Roni Yani, <br> Defendant <br><br> **Counterclaim:** <br> Roni Yani, <br> Counter-Claimant, <br> v. <br> Sarkis Aylozyan, <br> Counter-Defendant | **MEMORANDUM OF DECISION FINDING THAT INDEBTEDNESS OF $454,133.56 OWED BY RONI YANI TO SARKIS AYLOZYAN WAS DISCHARGED IN YANI'S BANKRUPTCY** <br><br> **TRIAL:** <br> Date:      June 27, 2017 <br> Time:     9:00 a.m. <br> Location: Ctrm. 1568 <br> Roybal Federal Building <br> 255 East Temple Street <br> Los Angeles, CA 90012 |

At issue is whether indebtedness in the amount of $454,133.56, owed by Roni Yani ("Yani") to Sarkis Aylozyan ("Aylozyan") as a result of a judgment entered by the Los Angeles Superior Court, is nondischargeable on the grounds of (1) false pretenses pursuant to §523(a)(2)(A) and (2) embezzlement pursuant to §523(a)(4). Trial was conducted on June 27, 2017. After Aylozyan presented his case in chief, Yani moved for judgment as a matter of law pursuant to Civil Rule

52(a).[1] The Court granted Yani's motion and set forth its findings of fact and conclusions of law on the record, but explained that those findings would be supplemented by a written Memorandum of Decision. For the reasons set forth below, the Court will enter judgment that Yani's debt to Aylozyan was discharged in Yani's Chapter 7 bankruptcy.[2]

## I. Background

On March 3, 2012, Aylozyan filed in the Los Angeles Superior Court (the "State Court") a civil action (the "State Court Action") against Yani. Aylozyan alleged that in 2006, he and Yani verbally agreed to purchase a tanning salon (the "Tanning Salon") and split the profits fifty-fifty. Aylozyan alleged that the Tanning Salon was profitable, but that Yani never remitted any of the profits to him. Aylozyan alleged that Yani sold the Tanning Salon in December 2009 without his knowledge or consent.

After Yani failed to appear at a status conferences scheduled in August 2013, the State Court struck Yani's answer. On December 18, 2013, the State Court entered a default judgment (the "State Court Judgment") in favor of Aylozyan in the amount of $454,133.56.

On June 10, 2009—prior to the filing of the State Court Action—Aylozyan filed a Chapter 7 petition.[3] The Chapter 7 Trustee issued a Report of No Distribution on August 31, 2009. On November 22, 2009, Aylozyan's case was closed without discharge based on Aylozyan's failure to file a Financial Management Course Certificate establishing that he had completed the required instructional course concerning personal financial management.[4] Aylozyan's schedules did not disclose any claims for civil damages against Yani in connection with the Tanning Salon.

On November 2, 2010, Yani filed a Chapter 7 petition (case no. 2:10-bk-57294-ER). Yani's schedules did not list Aylozyan as a creditor. Yani obtained a discharge on April 11, 2011. On January 3, 2014, Yani filed a motion to reopen his bankruptcy case so that he could schedule the State Court Judgment. On January 29, 2014, the Court granted the motion to reopen.[5] On February 5, 2014, Yani filed an Amended Schedule F, listing Aylozyan as a creditor in connection with the State Court Judgment.[6] On March 28, 2014, Aylozyan filed a complaint against Yani alleging that the State Court Judgment is non-dischargeable (the "Complaint"). After two motions to dismiss, the only claims for relief remaining in the Complaint are for false pretenses under §523(a)(2)(A) and embezzlement under §523(a)(4).

On September 16, 2015, Yani filed in the State Court an ex-parte application to set aside the State Court Judgment (the "Application to Set Aside Judgment").[7] First, Yani argued that the

---

[1] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.
[2] This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Civil Rule 52, made applicable to these proceedings by Bankruptcy Rule 7052.
[3] The petition was initially assigned Case No. 1:09-bk-17071-MT. As further described below, the case was subsequently reassigned from Judge Tighe to Judge Robles and given the new case number 2:16-bk-13414-ER.
[4] Doc. No. 15, Case No. 2:16-bk-13414-ER.
[5] Doc. No. 22, Case No. 2:10-bk-57294-ER.
[6] Doc. No. 24, Case No. 2:10-bk-57294-ER.
[7] Ex. 7, Doc. No. 82, Adv. No. 2:14-ap-01185-ER.

State Court Judgment was void because the claims in the State Court Action were property of Aylozyan's bankruptcy estate, and that therefore Aylozyan lacked standing to bring the action. The State Court Action, Yani argued, could only have been brought by the Chapter 7 Trustee in Aylozyan's bankruptcy case. Second, Yani argued that the State Court Judgment was void because Yani's liability with respect to the claims for relief asserted in the State Court Action had been discharged in Yani's bankruptcy. As a result of this Court's decision finding that Yani's filing of the Application to Set Aside Judgment violated the automatic stay (discussed below), the State Court never ruled upon the Application to Set Aside Judgment.

On February 8, 2016, Yani sought summary judgment before the Bankruptcy Court on the Complaint, making many of the same arguments he made in the Application to Set Aside Judgment. The Court found that disputed issues of material fact made it inappropriate to find, on summary judgment, that the State Court Judgment was void on the grounds that Yani's liability with respect to the claims for relief asserted in the State Court Action has been discharged in Yani's bankruptcy. The Court noted that because Yani had failed to schedule the claims giving rise to the State Court Judgment in his bankruptcy, the 60-day deadline for Aylozyan to file an objection to Yani's discharge would not have applied, unless Aylozyan had actual knowledge of Yani's bankruptcy petition. The Court found that disputes as to whether Yani had told Aylozyan about his bankruptcy petition made it inappropriate to determine, at the summary judgment stage, whether Aylozyan knew about the petition.

The Court further noted that the fact that Aylozyan did not obtain the State Court Judgment until after his bankruptcy case was closed did not mean that the State Court Complaint's causes of action were not property of Aylozyan's bankruptcy estate:

> In *Goldstein v. Stahl (In re Goldstein)*, 526 B.R. 13 (B.A.P. 9th Cir. 2015), the court held that the causes of action asserted in a suit filed two years after the debtors received their discharges were property of the estate. The *Goldstein* court held that a cause of action is property of the estate if it accrues prepetition:
>
>> "To determine when a cause of action accrues, and therefore whether it accrued pre-bankruptcy and is an estate asset, the Court looks to state law." *Boland v. Crum (In re Brown),* 363 B.R. 591, 605 (Bankr.D.Mont.2007) (citing *Cusano* ). "It is important, however, to distinguish principles of accrual from principles of discovery and tolling, which may cause the statute of limitations to begin to run after accrual has occurred for purposes of ownership in a bankruptcy proceeding." *Cusano,* 264 F.3d at 947.
>>
>> In California, "generally, a cause of action accrues and the statute of limitation begins to run when a suit may be maintained. Ordinarily this is when the wrongful act is done and the obligation or the liability arises, but it does not accrue until the party owning it is entitled to begin and prosecute an action thereon. In other words, a cause of action accrues upon the occurrence of the last element essential to the cause of action." *Howard Jarvis Taxpayers Assn. v. City of La Habra,* 25 Cal.4th 809, 815, 107 Cal.Rptr.2d 369, 23 P.3d 601 (2001) (citations and internal quotation marks omitted). Therefore, if a claim "could have been brought," it has accrued. *Cusano,* 264 F.3d at 947.
>
> *Id.*
>
> Here, the State Court Complaint alleges that [Aylozyan] and [Yani] entered into a verbal agreement in February 2006 to purchase and operating a tanning salon, with profits to be split fifty-fifty. State Court Complaint at ¶5 [Doc. No. 84]. The State Court

  Complaint alleges that the tanning salon was purchased in April 2006 and was profitable from April 2006 until December 2009, when [Yani] sold the tanning salon without [Aylozyan's] knowledge or consent. *Id.* at ¶8. The State Court Complaint alleges that [Yani] failed to remit any of the profits to [Aylozyan]. *Id.* at ¶10.

  [Aylozyan's] causes of action against [Yani] accrued prior to June 10, 2009, the date that [Aylozyan] filed his Chapter 7 petition.[8] According to the State Court Complaint, [Yani] had failed to remit to [Aylozyan] his share of the profits since April 2006. [Aylozyan] would have been entitled to begin and prosecute the State Court Complaint prior to June 10, 2009. Therefore, the causes of action asserted in the State Court Complaint are property of [Aylozyan's] estate, which [Aylozyan] was required to schedule.[9]

Ruling Denying Yani's Motion for Summary Judgment [Doc. No. 92] at 9–11.

 Based on its determination that the claims asserted in the State Court Complaint, and the corresponding State Court Judgment, were assets of Aylozyan's estate, the Court issued an order requiring Aylozyan to show cause why his bankruptcy case should not be reopened so that a Trustee could be appointed to administer the asset. The Court also found that Yani's attempt to set aside the State Court Judgment violated the automatic stay, and ordered that Yani would have to obtain stay-relief should he wish to continue proceedings before the State Court attacking the judgment. Yani never sought stay relief, and the State Court Judgment remains in effect.

 Aylozyan did not contest the Order to Show Cause. On May 5, 2016, the Court issued an order reopening Aylozyan's bankruptcy case and directing the United States Trustee (the "UST") to appoint a Trustee to administer the State Court Judgment.[10] On May 26, 2016, the UST appointed Wesley H. Avery as the successor Trustee.[11] On January 12, 2017, the Trustee issued a Report of No Distribution, stating that there were no assets available to be administered. On February 9, 2017, Aylozyan received a discharge.[12] On February 10, 2017, Aylozyan's case was closed,[13] resulting in the abandonment of the State Court Judgment to Aylozyan pursuant to §554.

---

[8] Some of the conduct upon which the State Court Judgment is based occurred postpetition. For example, the State Court Complaint alleges that the tanning salon was profitable through December 2009, when [Yani] sold the salon without [Aylozyan's] knowledge or authorization. Profits to which [Aylozyan] was entitled that accrued between June 10, 2009 and December 2009 would not be property of [Aylozyan's] bankruptcy estate. However, this fact did not relieve [Aylozyan] of the obligation to schedule the causes of action that had already accrued as of the date of [Aylozyan's] bankruptcy filing. The fact that additional wrongful conduct allegedly occurred postpetition does not remove from the bankruptcy estate the claims based upon the alleged prepetition wrongful conduct.

[9] The causes of action should have been listed on Schedule B—Personal Property, ¶21, "Other contingent and unliquidated claims of every nature…."

[10] Doc. No. 23, Case No. 2:16-bk-13414-ER.

[11] Doc. No. 25, Case No. 2:16-bk-13414-ER.

[12] Doc. No. 34, Case No. 2:16-bk-13414-ER.

[13] Doc. No. 35, Case No. 2:16-bk-13414-ER.

## II. Findings of Fact[14]

Based upon the testimony offered by Aylozyan at trial, the exhibits admitted into evidence, and the Joint Pretrial Stipulation (the "Pretrial Stipulation") [Doc. No. 129], the Court makes the following findings of fact.

Sometime in early 2006, Yani, Yani's wife Mariam (who is also Aylozyan's sister), Aylozan, and Aylozyan's mother met to discuss Yani's proposal that Yani and Aylozyan enter into a joint venture to purchase the Tanning Salon located at 17401 Ventura Boulevard, #A33, Encino, California 91316. It was Yani who proposed the purchase of the Tanning Salon to Aylozyan. Yani showed Aylozyan business records for the years 2003, 2004, and 2005 that had been prepared by the Tanning Salon's owner. The records showed the Tanning Salon's daily and monthly sales for the years 2003, 2004, and 2005, and showed that the Tanning Salon had been profitable during those years.

After Aylozyan had reviewed the Tanning Salon's business records, Yani, Mariam, Aylozyan, and Aylozyan's mother went to inspect the Tanning Salon. Aylozyan observed the Tanning Salon from the parking lot but did not go inside. Aylozyan looked through the Tanning Salon's window and was impressed—he concluded that the Tanning Salon was "a very nice, clean place."[15] Aylozyan told Yani that he needed some time to think about whether he wanted to jointly purchase the Tanning Salon with Yani.

Aylozyan ultimately decided to enter into a joint venture with Yani to purchase and operate the Tanning Salon. Aylozyan and Yani each contributed $125,000 as their share of the purchase price, for a total purchase price of $250,000. Pretrial Stipulation at ¶1.D. Aylozyan and Yani also each contributed $12,500 for a security deposit in connection with the Tanning Salon's lease, for a total security deposit of $25,000. *Id.* Aylozyan and Yani purchased the Tanning Salon in April 2006. *Id.* at ¶1.E.

On May 4, 2006, Yani formed Maui Tanning Group Inc. ("Maui Inc."). Ex. 7 (tax return for 2006 stating that Maui Inc. was incorporated on May 4, 2006). All of the Tanning Salon's business operations were conducted through Maui Inc., and Maui Inc. filed tax returns for the years 2006, 2007, 2008, and 2009. Yani was responsible for having Maui Inc.'s tax returns prepared and filed. Maui Inc.'s tax returns (Ex. 7) show that the Tanning Salon earned a profit only in 2008, but that the amount of the 2008 profit was more than offset by losses in 2006, 2007, and 2009:

| Tax Year | Gross Sales | Cost of Goods Sold | Compensation of Officers | Rental Expense | Ordinary Business Income/(Loss) |
|---|---|---|---|---|---|
| 2006 | 105,204 | 29,985 | 6,975 | 40,024 | (10,210) |
| 2007 | 201,711 | 38,733 | 4,800 | 98,881 | (1,608) |
| 2008 | 146,910 | 23,358 | 3,300 | 70,145 | 11,952 |
| 2009 | 41,210 | 3,030 | 900 | 30,210 | (15,763) |

The Court finds that the tax returns accurately reflect the profit and loss of Maui Inc. for the years 2006–2009. Aylozyan's theory is that the tax returns underreported Maui Inc.'s profits and

---

[14] To the extent any findings of fact are more properly designated conclusions of law, they shall be deemed as such. To the extent any conclusions of law are more properly designated as findings of fact, they shall be deemed as such.

[15] An audio recording of the trial is on file with the Clerk of the Court.

that Yani misappropriated the underreported profits for his own personal use. In support of this contention, Aylozyan pointed to Maui Inc.'s bank statements. The total deposits into Maui Inc.'s bank account exceed the gross sales reported to the Internal Revenue Service ("IRS"), as follows:

| Tax Year | Gross Sales Reported to IRS | Total Amount Deposited Into Maui Inc.'s Bank Account | Amount by Which Deposits Into Maui Inc.'s Bank Account Exceeds Gross Sales Reported to IRS |
|---|---|---|---|
| 2006 | 105,204 | 139,174 | 33,970 |
| 2007 | 201,711 | 220,311 | 18,600 |
| 2008 | 146,910 | 252,227 | 105,317 |
| 2009 | 41,210 | 136,341 | 95,131 |

Aylozyan's theory that Yani must have appropriated funds in Maui Inc.'s bank account relies on the assumption that all deposits into Maui Inc.'s bank account must have originated from cash payments made by the Tanning Salon's customers. But Aylozyan failed to offer any evidence in support of this assumption. Aylozyan acknowledged on cross examination that he did not know the source of all the deposits into Maui Inc.'s bank account. When asked whether a $3,000 deposit made on May 26, 2006 came from cash collected at the Tanning Salon, Aylozyan responded, "Could be." In sum, Aylozyan's testimony on cross examination showed that his belief that all the deposits into Maui Inc.'s bank account originated from cash collected from customers was nothing more than an assumption, and that Aylozyan lacked personal knowledge as to the source of the bank account deposits. Because Aylozyan could not rule out the possibility that Yani could have been depositing his personal funds into the Maui Inc. bank account to bolster the business' balance sheet, he has failed to carry his burden of showing that funds were misappropriated from Maui Inc.

If Aylozyan could somehow overcome this fundamental failure of proof, his §523(a)(4) embezzlement claim would still fail, because even if funds were misappropriated from Maui Inc., Aylozyan failed to show that Yani was the person who engaged in the misappropriation. There was no testimony presented as to who had access to Maui Inc.'s bank account. Thus, if funds were misappropriated, the misappropriation could have been committed by someone other than Yani. Aylozyan's testimony on cross examination illustrates his complete failure to meet his burden of proof:

> Question: So what happened with that money? You worked there for four years? What happened with the money?
> Answer: I didn't take it. So I don't know.

## III. Conclusions of Law
A. Section 523(a)(2)(A)

Section 523(a)(2)(A) provides: "A discharge under section 727 … of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

A creditor seeking to have a debt declared nondischargeable has the burden of proof under the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991). To prevail on a § 523(a)(2)(A) claim, a creditor must prove that:

    (1) the debtor made the representations;
    (2) that at the time he knew they were false;
    (3) that he made them with the intention and purpose of deceiving the creditor;
    (4) that the creditor relied on such representations; and
    (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

    Aylozyan's testimony failed to show that Yani made any false representations in connection with the proposal to purchase the Tanning Salon. In fact, Aylozyan's testimony showed that Yani did not make any material representations at all in connection with the proposed joint venture. The business records that Yani showed Aylozyan were prepared by the Tanning Salon's current owner, not by Yani. Aylozyan decided to go into business with Yani based upon his review of those records, and based upon his visual inspection of the Tanning Salon.

    For these reasons, Yani is entitled to judgment as a matter of law in his favor with respect to Aylozyan's §523(a)(2)(A) claim.

B. Section 523(a)(4)

*1. Aylozyan Lacks Standing to Assert a §523(a)(4) Embezzlement Claim Against Yani*

    Aylozyan lacks standing to pursue, in his individual capacity, a §523(a)(4) embezzlement claim against Yani, because such a claim belongs to Maui Inc. Aylozyan has not brought the embezzlement claim by way of a derivative action on behalf of Maui Inc.; instead, Aylozyan brings the embezzlement claim in his individual capacity. Where, as here, claims are derivative in nature, they may not be pursued by a shareholder in his or her individual capacity.[16]

    "A shareholder's derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders when injury is caused to the corporation that may not otherwise be redressed because of failure of the corporation to act." *PacLink Commc'ns Int'l, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 964, 109 Cal. Rptr. 2d 436, 439 (2001). "[T]he action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets." *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 228, 26 Cal. Rptr. 3d 798, 809 (2005) (internal citations omitted). The loss of corporate profits "as a result of negligent or intentional wrongdoing by a corporation's officers, directors, or majority shareholders results in corporate injury, for which only the corporation may sue to recover." *Id.* at 128 Cal.App.4th 230.

    Here, it was Maui Inc. that was the owner of the Tanning Salon. All of the Tanning Salon's business was conducted through Maui Inc. The entity that filed tax returns related to income generated by the Tanning Salon was Maui Inc. All profits generated by the Tanning Salon were profits of Maui Inc. To the extent, if at all, that such profits were embezzled, the injury was to Maui Inc., not to Aylozyan individually. Aylozyan's theory is that he suffered injury because of the intentional wrongdoing of Yani, one of Maui Inc.'s officers. Because the gravamen of

---

[16] The record does not reflect whether Aylozyan was a shareholder in Maui Inc., or whether Aylozyan's interest in Maui Inc. took some other form. Regardless of the form of Aylozyan's interest in Maui Inc., he lacks standing to pursue claims belonging to Maui Inc.

Aylozyan's complaint is injury to Maui Inc., Aylozyan's embezzlement claim is derivative, and Aylozyan lacks standing to pursue that claim in his individual capacity.

*2. Even if Aylozyan Had Standing to Assert a §523(a)(4) Claim, He Has Failed to Show by a Preponderance of the Evidence that Yani Embezzled Funds*

Section 523(a)(4) excepts from discharge debts arising from embezzlement. "Under federal law, embezzlement in the context of nondischargeability has often been defined as 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.' Embezzlement, thus, requires three elements: '(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud.'" *Transamerica Comm. Finance Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991) (internal citations omitted).

Even setting aside Aylozyan's lack of standing, his §523(a)(4) claim fails because he has not shown by a preponderance of the evidence that Yani embezzled funds from Maui Inc. As discussed in Section II, "Findings of Fact," Aylozyan failed to present evidence sufficient to establish that Yani had misappropriated funds in Maui Inc.'s bank account. Aylozyan's case boiled down to the idea that because the total amount deposited into Maui Inc.'s bank account exceeded income reported to the IRS, Yani must have misappropriated the difference. But Aylozyan failed to present sufficient evidence that there was misappropriation, much less evidence that Yani was the source of any misappropriation that may have occurred.

## IV. Conclusion

Based upon the foregoing, Yani's motion for judgment as a matter of law with respect to Aylozyan's claims under §523(a)(2)(A) and (a)(4) is granted. The Court will enter final judgment in Yani's favor consistent with this Memorandum of Decision. Although the Court has not yet adjudicated the issues raised by Yani's counterclaim for sanctions under Bankruptcy Rule 9011, the Court finds, pursuant to Civil Rule 54(b), that there is no just reason to delay entry of judgment with respect to Yani as to the claims raised by the Complaint. The Court will issue a separate order setting forth the procedure that will apply for adjudication of the issues raised by Yani's counterclaim for sanctions under Bankruptcy Rule 9011.

###

Date: July 18, 2017

Ernest M. Robles
United States Bankruptcy Judge